**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3192-19

CARROL McMORROW,

     Plaintiff-Respondent,

v.

BOROUGH OF ENGLEWOOD
CLIFFS,

     Defendant,[1]

and

LISETTE DUFFY, in her official
capacity as Municipal Clerk and
Records Custodian for the
Borough of Englewood Cliffs,

     Defendant-Appellant.

_____

     Argued January 18, 2022 – Decided February 25, 2022

     Before Judges Messano and Rose.

---

[1] We granted the Borough's motion to file a separate brief, but it failed to file any brief and did not participate in the appeal.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6702-19.

Michael Malatino argued the cause for appellant (Meredith Malatino Law, LLC, attorneys; Michael Malatino, on the briefs).

Donald M. Doherty, Jr., argued the cause for respondent.

PER CURIAM

At all relevant times, defendant Lisette Duffy was the borough clerk and records custodian for defendant Borough of Englewood Cliffs (the Borough, collectively, defendants). Plaintiff Carrol McMorrow served a request pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, seeking government records in eight categories:

> 1. Copy of all communications between any of the following representing the Borough . . . (including Council members past and present, James Barberio, Anne Marie Rizzuto, [defendant], Albert Wunsch, Mark Ruderman and/or Joseph Mariniello) and the Department of Community Affairs, including but not limited to the Division of Local Government Services, from 10/1/18 to 4/1/19.

> 2. Copy of all communications between any of the following representing the Borough . . . (including Council members past and present, James Barberio, Anne Marie Rizzuto, [defendant], Albert Wunsch, Mark Ruderman and/or Joseph Mariniello) and the Office of Administrative Law from 10/1/18 to 4/1/19.

2

3. Copy of all communications between Mark Ruderman and any member of the Council or between Mark Ruderman and [defendant] regarding disciplinary charges concerning [defendant] between 9/1/18 and 4/1/19.

4. Copy of all communications between Mark Ruderman and Albert Wunsch regarding disciplinary charges concerning [defendant] between 9/1/18 and 4/1/19.

5. Copy of all communications between Albert Wunsch and [defendant] regarding disciplinary charges concerning [defendant] between 9/1/18 and 4/1/19.

6. Copy of all communications between Carin Geiger and David J. Ruitenberg of Murphy McKeon beginning 1/3/2019 and 4/1/19.

7. Copy of all communications between Al Wunsch and David J. Ruitenberg of Murphy McKeon beginning 1/3/2019 and 4/1/19.

8. Copy of all papers distributed to the Mayor and Council by Carin Geiger at the 3-13-19 Mayor and Council meeting.

Defendant responded, indicating as to items one and two, she "provided [plaintiff's] request to [the borough's] I.T. consultant," who "quoted approximately [eight] hours (max) for the search," at a charge of $125 per hour. As to items three through seven, defendant provided some "responsive records," but after review with the attorneys named in those requests, defendant responded all other records were subject to OPRA's "exception[s] for [a]ttorney [c]lient

3

[p]rivilege, [a]ttorney [w]ork [p]roduct, [p]ersonnel and deliberative." As to item eight, defendant advised she was not provided with copies of the papers distributed by Geiger, the Borough did not retain any copies, and some of the "governing body members informed [defendant] they threw the papers out."

Plaintiff filed a complaint demanding access to the records "without the imposition of special service charges," an order requiring the Borough produce the records responsive to items three through seven for in camera review by the court, and an order requiring the Borough conduct a "new search" regarding item eight and compel defendants to "outline what they did to conduct the prior search and the new search." Defendant filed a certification as part of the Borough's opposition to the complaint. Among other things, she detailed the limits of her "technological knowledge" of the computer system and her conversation with the Borough's "IT person," Kamran Mahmoudarabi, regarding items one and two. Mahmoudarabi also filed a certification explaining the details of the work he needed to perform to accommodate the two requests.

Defendant also explained that the attorneys named in items three through five and number seven all told her the documents were privileged; the attorney named in item six advised he had no communications with Geiger. Lastly, defendant explained that the Borough attorney, mayor, and council members did

not have copies of the documents mentioned in item eight; one council member never answered defendant's inquiry.

The judge held oral argument on the return date of the order to show cause and subsequently issued a written opinion supporting her January 6, 2020 order.[2] After comprehensively reciting relevant OPRA caselaw, the judge concluded defendants failed to justify imposition of a special service charge pursuant to N.J.S.A. 47:1A-5(c) or (d), "simply because [defendant wa]s incapable of performing searches within the email accounts for multiple named individuals." She ordered defendant to produce the records within ten days.

The judge found defendant's responses to the remaining requests were inadequate because she failed to provide specific information regarding asserted OPRA exemptions. The judge ordered defendants to produce a Paff certification[3] regarding items three through eight, and a Vaughn index[4] as to items three through seven.

---

[2] The order and supporting opinion were filed January 8, 2020.

[3] In Paff v. New Jersey Department of Labor, we set out information the records custodian must supply in sworn statements when responding to a records request. 392 N.J. Super. 334, 341 (App. Div. 2007).

[4] In a "Vaughn index," "the custodian of records identifies responsive documents and the exemptions it claims warrant non-disclosure." N. Jersey

Although noting the filing of Paff certifications and Vaughn indexes were not required "at the time of an OPRA response," the judge concluded doing so were "prudent means of complying with the statute." Citing several previous OPRA cases involving defendant and the Borough, the judge noted, "[d]espite this court's repeated warnings, [defendant] has continued to fail in practicing such diligence."

The judge found "[t]here [wa]s no question that [the papers referenced in] item eight constitute[] a government record" under OPRA. She concluded "it [was defendant's] responsibility to ensure that appropriate records [we]re kept," and defendant could have requested a copy from Geiger at the meeting or "requisitioned a copy . . . once she received" plaintiff's OPRA request. The judge had imposed a penalty against defendant in a prior lawsuit, and now she concluded under the "totality of the circumstances" defendant's "blanket denials violate[d] both the statute and the court's prior numerous warnings." The judge held defendant "unreasonably den[ied] access in a knowing and willful manner," and because it was defendant's second violation, the judge imposed a $2,500

Media Grp., Inc. v. Bergen Cnty. Prosecutor's Off., 447 N.J. Super. 182, 191 (App. Div. 2016) (citing Vaughn v. Rosen, 484 F.2d 820, 826–27 (D.C. Cir. 1973)).

civil penalty pursuant to N.J.S.A. 47:1A-11. The judge's order prohibited the Borough from paying the penalty or reimbursing defendant.

Defendants moved for reconsideration. Defendant supplied a more detailed certification regarding her actions in responding to plaintiff's requests and documentation detailing her interactions with counsel regarding items three through seven. The judge granted the motion in part, vacating her prior order as it related to items three, four, five and seven. Somewhat inexplicably, despite the undisputed denial by the attorney named in item six of any communication between him and Geiger, much less the existence of a responsive government record, the judge reiterated that a Paff certification and Vaughn index as to item six must be produced within seven days. The judge denied reconsideration of her prior order regarding items one, two and eight, again ordering a Paff certification and Vaughn index as to those items. Finally, the judge reaffirmed the civil penalty imposed on defendant.

Defendant appeals from the initial order and the order denying reconsideration. She raises a single issue, specifically that the judge mistakenly abused her discretion in finding defendant knowingly and willfully violated

OPRA and unreasonably denied access to a government record.  We agree the judge erred and reverse.[5]

"OPRA, at its core, was 'designed to promote transparency in the operation of government,' with a purpose 'to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'"  Bozzi v. City of Jersey City, 248 N.J. 274, 283 (2021) (quoting first Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012); and then quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)).  On appeal from an order deciding an OPRA dispute, we defer to the judge's factual findings when supported by adequate, substantial and credible evidence, but we owe no deference to her interpretation of the law or the legal consequences that flow from those facts.  N. Jersey Media Grp., Inc. v. State, 451 N.J. Super. 282, 301–02 (App. Div. 2017) (citations omitted).

N.J.S.A. 47:1A-11(a) provides:

> A public official, officer, employee or custodian who knowingly and willfully violates [OPRA] . . . and is found to have unreasonably denied access under the totality of the circumstances, shall be subject to a civil

---

[5] The only relief defendant seeks in her brief is reversal and vacation of the civil penalty imposed against her, not reversal of the other paragraphs of the judge's orders finding violations of OPRA.  We only address the merits of the trial judge's rulings as to items one, two and eight in the context of the propriety of the civil penalty.

penalty of $1,000 for an initial violation, $2,500 for a second violation that occurs within [ten] years of an initial violation, and $5,000 for a third violation that occurs within [ten] years of an initial violation. This penalty shall be collected and enforced in proceedings in accordance with the "Penalty Enforcement Law of 1999, [N.J.S.A. 2A:58-10 to -12]," and the rules of court governing actions for the collection of civil penalties. The Superior Court shall have jurisdiction of proceedings for the collection and enforcement of the penalty imposed by this section.

Appropriate disciplinary proceedings may be initiated against a public official, officer, employee or custodian against whom a penalty has been imposed.

"N.J.S.A. 47:1A-11 provides a valuable means to compel compliance with OPRA by public officials, officers, employees and records custodians who might otherwise flout OPRA's requirements and willfully and knowingly deprive the public of access to government records." N. Jersey Media Grp., 451 N.J. Super. at 309. But "custodians[] are only personally liable if they 'knowingly and willfully' violate the provisions of OPRA[] and are 'found to have unreasonably denied access [to government records] under the totality of the circumstances.'" Courier News v. Hunterdon Cnty. Prosecutor's Off., 378 N.J. Super. 539, 546 (App. Div. 2005) (alteration in original) (second emphasis added) (quoting N.J.S.A. 47:1A-11(a)).

The phrase "willful and knowing violation" is not defined in the statute, therefore we assign the words their "generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1. "'Willful' has been defined as 'deliberate, voluntary, or intentional,' 'but not necessarily malicious.'" State v. Moran, 202 N.J. 311, 323 (2010) (first quoting Webster's Unabridged Dictionary of the English Language 2175 (2001); and then quoting Black's Law Dictionary 1737 (9th ed. 2009)). "'Knowing' is well understood to be an awareness or knowledge of the illegality of one's act." Allstate Ins. Co. v. Northfield Med. Ctr., PC, 228 N.J. 596, 620 (2017) (citing Black's Law Dictionary 950).

In Bart v. City of Paterson Housing Authority, we considered the defendant's appeal from the final decision of the Government Records Council (GRC) that the authority's record custodian knowingly and willfully violated OPRA. 403 N.J. Super. 609, 612 (App. Div. 2008). We accepted the GRC's definition of those terms, specifically "a knowing and willful violation of the statute would require that the custodian must have had actual knowledge that his actions were wrongful, and that there had to be a positive element of conscious wrongdoing." Id. at 619. "We decline[d] to equate a public entity's decision to

consult with its counsel and to seek the assistance of counsel in drafting correspondence with a knowing and willful violation of the statute." Ibid.

Here, defendant sought the advice of the Borough's IT consultant in fashioning a response to items one and two. The judge ignored the certification of Mahmoudarabi, who explained a response required the expenditure of some time and effort, and instead concluded defendant's limited technological knowledge of the computer system was a deficiency supporting a finding of "conscious wrongdoing." Moreover, the judge expressed her personal belief about the ease in accessing the computer system and providing the requested emails, despite defendant's clear certification that she was not the administrator of the Borough's computer system and did not have the ability to access the emails of the various officials.

We do not consider whether the judge's ultimate conclusion that defendants' response to items one and two violated OPRA was in error; we only conclude that the record evidence did not meet the requisite standard of proof to find a knowing and willful violation.

Turning to item eight, OPRA defines a "[g]overnment record" as:

> any paper . . . document . . . data processed or image processed document, [or] information stored or maintained electronically . . . that has been made, maintained or kept on file in the course of his or its

> official business by any officer, commission, agency or authority of the State . . . or that has been received in the course of his or its official business by such officer, commission, agency, or authority . . . .
>
> [N.J.S.A. 47:1A-1.1 (emphasis added).]

Item eight sought "papers" that a private citizen distributed to the mayor and council at a public meeting. The record fails to reveal what these papers were or whether the mayor or council even addressed them during the meeting. It is clear, however, that defendant was never given a copy of the documents, and they were never formally filed or acknowledged to be part of the official proceedings. We express grave doubt they were government records at all.

In any event, the judge concluded these unspecified documents were government records and further determined defendant's failure to incorporate them as part of the official proceedings and archive them as government records was sufficient to find a violation of OPRA. More importantly, it was the judge's personal opinion about defendant's obligations to do more to preserve and produce the documents that justified the finding of a knowing and willful violation of OPRA. That legal conclusion was clearly erroneous and deserves no further attention. R. 2:11-3(e)(1)(E).

In opposing this appeal, plaintiff's counsel addressed a procedural issue that is not before us but deserves mention. As noted, the enforcement of

12

sanctions imposed pursuant to N.J.S.A. 47:1A-11 requires summary proceedings under the Penalty Enforcement Law of 1999. Under that statute, "[i]f a judgment for a civil penalty is rendered against a defendant, payment shall be made to the court and shall be remitted to the State Treasurer of New Jersey, unless other disposition is provided for in the statute imposing the penalty." N.J.S.A. 2A:58-11(f). OPRA does not provide for some "other disposition." As counsel noted, plaintiff is not entitled to the monies collected and has no interest in the summary proceedings contemplated under N.J.S.A. 47:1A-11.

Plaintiff's counsel avers that perhaps the Attorney General must intervene to enforce the civil penalty, and he candidly acknowledged before us that the practice in trial courts throughout the State lacks uniformity and consistency. We readily understand. However, in light of our disposition of this appeal, the issue is not properly before us, and we will not address it at this time.

Reversed. The civil penalties imposed against defendant are vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION