**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2726-22

TAMARA WILLIAMS,

     Plaintiff-Appellant,

v.

MERCER COUNTY BOARD
OF ELECTIONS and
COUNTY OF MERCER,

     Defendants-Respondents.

_____

Argued March 18, 2024 – Decided April 5, 2024

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0276-23.

Michael L. Collins argued the cause for appellant (King Moench & Collins, LLP, attorneys; Michael L. Collins, of counsel and on the briefs).

Paul R. Adezio, Mercer County Counsel, argued the cause for respondents.

PER CURIAM

Plaintiff Tamara Williams appeals from an April 28, 2023 order dismissing her complaint against defendants Mercer County Board of Elections ("BOE") and Mercer County with prejudice, denying her request for audio and video recordings, and denying her request for attorney fees pursuant to the Open Public Records Act ("OPRA"), N.J.S.A. 47:1A-1 to -13.  We affirm.

I.

Plaintiff's wife Jennifer Williams attended a BOE public meeting on December 20, 2022.  The BOE was reviewing the results from a runoff election for the Trenton North Ward Council seat, for which Jennifer Williams was a candidate.  At some point before or during the meeting, Sherry Sinatra-Henderson, an elections investigator for the BOE, stated she was going to record the meeting on an electronic device, which plaintiff asserts was an iPhone or iPad.

On December 22, 2022, plaintiff filed an OPRA request seeking copies of the "audio and visual recordings" made during the December 20 meeting.  On December 23, 2022, defendants informed plaintiff, "[Mercer] County has no records responsive to this request."

In February 2022, plaintiff filed a verified complaint "disput[ing] the accuracy of [the] OPRA adjudication based upon . . . first-hand knowledge . . .

2

of visual recordings of the December 20, 2022 meeting." She claimed "[d]efendants' failure to produce this recording violate[d] their obligations under OPRA." Plaintiff further asserted defendants "erroneously responded that no responsive records exist" because she "observed an employee or officer of the [BOE] announce that she was recording an 'official' video of the . . . meeting." Plaintiff contended the recording is a "government record" under N.J.S.A. 47:1A-1.1. She further argued she was entitled to attorney's fees for defendants' failure to comply with OPRA.

Before the trial court, defendants argued there was no record to produce. Furthermore, they are not required to record meetings but are only obligated to keep minutes of their meetings. In addition, defendants produced a certification from Henderson who stated she "attempted to videotape the meeting through the use of a personal cell phone that was placed in the back of the meeting room. However, the cell phone failed to record the meeting, and there [was] no 'visual recording' of the meeting."

After receiving Henderson's certification, plaintiff asserted defendants did not comply with the requirements of Paff v. New Jersey Department of Labor (Paff II), 392 N.J. Super. 334 (App. Div. 2007). She argued "[h]ad defendants complied with Paff and provided [p]laintiff the general information contained in

3

the Henderson [c]ertification as part of their OPRA response, [p]laintiff would not have needed to initiate this litigation."

On April 28, 2023, the trial court denied plaintiff's application for an order mandating defendants provide her with the requested records, denied her application for attorney's fees, and dismissed her complaint with prejudice. The court reasoned as follows:

> [I]n its OPRA response, [defendants] stated that [they] do[] not have responsive records to [p]laintiff's request. As OPRA does not mandate [d]efendants to create records, [d]efendants were not required to produce a certification explaining why the requested recording does not exist. Plaintiff is essentially seeking a Paff certification at the time of the OPRA response, specifically . . . Henderson's certification. However, OPRA does not require [d]efendants to include a Paff certification in their response to [p]laintiff's request. See N.J.S.A. 47:1A-1.

The court further found plaintiff was not entitled to attorney's fees because she was not a prevailing party. Moreover, defendants "did not knowingly or willfully violate OPRA. Therefore, [p]laintiff [was] not entitled to a civil penalty."

II.

A.

4

On appeal, plaintiff argues the trial court erred in holding defendants' response—that it had no responsive records to plaintiff's request, without disclosing Henderson's phone failed to record the meeting—was proper under OPRA. Plaintiff asserts that defendants, in their denial of her OPRA request, should have advised her that Henderson's attempt to record the meeting failed, which is why there was no video recording of the meeting. She contends defendants acted in an "obstructionist" manner by failing to provide these details. Plaintiff claims she was only able to discover this fact "after she obtained private counsel, filed a . . . complaint, and paid a filing fee."

Plaintiff asserts defendants were required to provide a <u>Paff</u> certification or other explanation regarding their failure to produce the video recording. She argues the trial court's interpretation of <u>Paff II</u> is incorrect because OPRA does not provide for a "post-denial back-and-forth that a requester [of records] or records custodian is required to engage in." Plaintiff contends the only statutory recourse for an individual whose OPRA request is denied is to initiate a proceeding pursuant to N.J.S.A. 47:1A-6, which plaintiff did here. She argues the trial court's decision ultimately means a requester has "no readily accessible means for determining what happened" to a purported recording other than resorting to the courts and paying a filing fee.

5                                                    A-2726-22

Plaintiff further contends that if we reverse, the matter should be remanded for the court to assess attorney's fees and civil penalties. She relies on North Jersey Media Group, Inc. v. Office of the Governor, 451 N.J. Super. 282, 293-94 (App. Div. 2017), where attorney's fees were awarded to a prevailing plaintiff when the defendant failed to comply with OPRA's requirements, including Paff certification deficiencies. She also argues a requester may be entitled to an award of civil penalties under N.J.S.A. 47:1A-11 when a records custodian fails to comply with OPRA.

B.

"Our review of a trial court's interpretation of OPRA is de novo." Underwood Props., LLC v. City of Hackensack, 470 N.J. Super. 202, 211 (App. Div. 2022). See also In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 273-74 (2017) ("[D]eterminations about the applicability of OPRA and its exemptions are legal conclusions, and are therefore subject to de novo review.") (internal citations omitted). "Findings of fact, however, are reviewed deferentially." O'Boyle v. Borough of Longport, 426 N.J. Super. 1, 8 (App. Div. 2012) (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)).

"The purpose of OPRA 'is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils

A-2726-22

inherent in a secluded process.'" O'Shea v. Twp. of W. Millford, 410 N.J. Super. 371, 379 (App. Div. 2009) (quoting Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 535 (2005)). The statute "shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. The records custodian has the burden to show that its denial of access was authorized by law. N.J.S.A. 47:1A-6; Lagerkvist v. Off. of Governor, 443 N.J. Super. 230, 234 (App. Div. 2015).

Indeed, "OPRA allows the public access to all government records that are not exempt from public disclosure." Commc'ns Workers of Am. v. Rousseau, 417 N.J. Super. 341, 355 (App. Div. 2010). The detailed procedure for submitting an OPRA request "purposefully devises a uniform procedure to be followed by one making a request for government records and one responding to that request." Bozzi v. City of Atl. City, 434 N.J. Super. 326, 333 (App. Div. 2014); see also Paff v. City of E. Orange, 407 N.J. Super. 221 (App. Div. 2009). OPRA clearly identifies the responsibilities of the requestor and the agency to ensure prompt access to records. See N.J. Builders Ass'n v. N.J. Council on Affordable Hous., 390 N.J. Super. 166, 176 (App. Div. 2007).

OPRA defines "government record," in pertinent part, as:

> any paper . . . information stored or maintained electronically . . . that has been made, maintained or

> kept on file in the course of . . . its official business by any . . . political subdivision . . . or that has been received in the course of . . . its official business by any . . . political subdivision . . . .
>
> [N.J.S.A. 47:1A-1.1 (emphasis added).]

Moreover, OPRA provides a records custodian must "indicate the specific basis" for the denial of access. N.J.S.A. 47:1A-5(g); Conley v. N.J. Dep't of Corr., 452 N.J. Super. 605, 611 (App. Div. 2018); see also Lagerkvist, 443 N.J. Super. at 235 (finding custodian provided "'specific basis' for the denial of access" when he stated the plaintiff's request was "unclear" (quoting Gannett N.J. Partners, LP v. Cnty. of Middlesex, 379 N.J. Super. 205, 215 (App. Div. 2005))).

Initially, we observe defendants had no obligation to record the BOE meeting. See N.J.S.A. 10:4-14.[1] However, defendants concede that if a video recording had been prepared by the BOE, it was obligated to produce a copy in response to plaintiff's request. Here, Henderson's cell phone failed to record the meeting. Accordingly, the video recording requested by plaintiff was never created or maintained pursuant to N.J.S.A. 47:1A-1.1. This was not a situation where a public record was generated and subsequently destroyed, because the

---

[1] N.J.S.A. 10:4-14 does require "[e]ach public body shall keep reasonably comprehensible minutes of all its meetings . . . ."

public record never existed in the first place. We are satisfied defendants properly responded to plaintiff's request that they had no records to produce.

We are also unpersuaded defendants were required to provide a Paff certification in response to plaintiff's request. Paff II, 392 N.J. Super. 334. Paff II involved lengthy litigation where the Government Records Council ("GRC") initially dismissed the plaintiff's complaint on the ground that the records requested were confidential. Id. at 337. We reversed and remanded. Ibid.[2]

On remand, the GRC completed an in camera inspection of various records and concluded certain portions of the records were confidential. Id. at 338. It directed the Department of Labor ("DOL") to release redacted versions of the documents. Ibid. The GRC further directed the DOL to conduct a final inspection to determine if there were any other documents available that were responsive to the plaintiff's request; an additional document was located and ultimately produced to the plaintiff. Ibid. During the remand period, the State Division of Records and Archives authorized the destruction of certain documents. Id. at 339-40. The plaintiff argued the DOL "engaged in routine document destruction after his initial requests but failed to preserve the

---

[2] Paff v. N.J. Dep't of Labor (Paff I), 379 N.J. Super. 346 (App. Div. 2005).

A-2726-22

documents he requested," and he sought discovery on the "facts surrounding the alleged destruction of requested records." Id. at 339-40.

We noted, "[w]ith respect to future requests, . . . the agency to which the request is made shall be required to produce sworn statements" setting forth:

> (1) the search undertaken to satisfy the request;
>
> (2) the documents found that are responsive to the request;
>
> (3) the determination of whether the document or any part thereof is confidential and the source of confidential information; [and]
>
> (4) a statement of the agency's document retention/destruction policy and the last date on which documents that may have been responsive to the request were destroyed.
>
> [Id. at 341 (emphasis omitted).]

We further noted the statement "shall have appended to it an index of all documents deemed by the agency to be confidential in whole or in part, with an accurate description of the documents deemed confidential." Ibid.

The facts in Paff II are far afield from the allegations in the present matter. Here, defendants did not assert any claim of confidentiality and, therefore, there was no need to prepare a privilege log. Moreover, the record requested was not destroyed, and there were no issues concerning document retention or

destruction policies, nor was there a need to provide information regarding "the last date on which documents that may have been responsive to the request were destroyed." See id. at 341. Plaintiff's request for the video recording was a simple request, and defendants' response was straightforward. In short, under the specific facts of this case, we conclude defendants were not required to provide plaintiff a Paff certification.

Because we affirm the trial court's order denying plaintiff's OPRA request, plaintiff is not a prevailing party and, therefore, we need not address her remaining arguments regarding counsel fees or civil penalties. To the extent we have not addressed any of plaintiff's remaining arguments, we determine they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-2726-22