SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Alex Rosetti v. Ramapo-Indian Hills Regional High School Board of Education**
**(A-72-24) (090375)**

**Argued January 5, 2026 -- Decided June 11, 2026**

**JUSTICE PIERRE-LOUIS, writing for a unanimous Court.**

In this appeal, the Court considers whether logs of personal, private email accounts containing government-related emails are government records pursuant to the Open Public Records Act (OPRA).

In January 2023, respondent Alex Rosetti made an OPRA request to the Ramapo-Indian Hills Regional High School Board of Education and its records custodian, Thomas Lambe (collectively, the Board) seeking certain records, including "email logs of all past and current Board members for all email accounts in which they have conducted or discussed Board of Education matters." The Board produced a redacted log derived from Board-issued government email accounts, but it did not produce email logs from Board members' personal email accounts which they used to conduct Board business. Rosetti reaffirmed his position that the Board is required to produce the requested email logs.

In December 2023, the trial court denied Rosetti's request. The Appellate Division reversed and held that email logs from Board members' personal email accounts discussing Board business are subject to OPRA disclosure. 481 N.J. Super. 1, 12 (App. Div. 2025). The Court granted certification. 260 N.J. 604 (2025).

**HELD:** Logs of government-related emails contained in personal email accounts are government records under OPRA.

1. Under OPRA, "all government records shall be subject to public access unless exempt." N.J.S.A. 47:1A-1. Emails fall within OPRA's definition of a "record." Id. at -1.1. In Paff v. Galloway Township, the Court held that a log of electronically stored information in emails also qualifies as a government record under OPRA. See 229 N.J. 340, 357 (2017). The Court determined that this extraction of specific electronically stored information is not the creation of a new record, but rather disclosure of existing government records. Id. at 353. In Simmons v. Mercado, the Court held that complaint-summonses created by Millville Police Department

1

officers were subject to disclosure, regardless of who maintained the files or where they were maintained. 247 N.J. 24, 29, 40-41 (2021). And OPRA's broad reach includes communications on personal devices and records contained in personal accounts, so long as those records involve government business. (pp. 13-17)

2. Here, the Board must produce logs of government-related emails found within the Board members' private email accounts. During the pendency of this litigation, Rosetti sought "a Galloway-type email log" -- one generated electronically using metadata from an email server. Rosetti later conceded, however, that logs of Board members' private email accounts consisting only of emails between Board members would suffice. Rosetti even suggested a search procedure that essentially requires Board members to search their inboxes as well as their trash, sent, and any other relevant folders for messages to or from other Board members. The Court agrees that such a log would be acceptable and responsive to Rosetti's OPRA request and holds that the Board and its members must search their personal email accounts in this manner, or by any other acceptable method that will yield the Board-related emails, in order to create logs of government-related emails housed in those personal email accounts. After Board members complete searches of their private email accounts and produce a log or logs of government-related emails, they should submit a certification detailing the searches they conducted so that, on review, a court can assess whether proper searches were completed. (pp. 18-21)

3. Rosetti's OPRA request for "[e]mail log[s] of Board Members from their own personal email addresses" was overbroad. It seemingly requested logs of entire private email accounts, irrespective of the amount of non-government-related messages the accounts might contain. The Appellate Division's ruling was also very broad in its holding that "email logs of the Board members' private servers sought by Rosetti are subject to OPRA because the emails discuss Board business and were made by the Board members." 481 N.J. Super. at 12. The Court does not find that logs of entire private email accounts are government records by virtue of the fact that government-related emails might be present in those accounts. It is only the log of government-related emails that is a government record. (pp. 21-22)

4. Government agencies should strongly advise their employees, elected officials, and others engaged in government-related business to refrain from using their personal email accounts when conducting government-related business. (p. 23)

**AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion.**

2

Alex Rosetti,

Plaintiff-Respondent,

v.

Ramapo-Indian Hills
Regional High School
Board of Education
and Thomas Lambe,
in his official capacity
as Records Custodian,

Defendants-Appellants.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
481 N.J. Super. 1 (App. Div. 2025).

| Argued | Decided |
|--------|---------|
| January 5, 2026 | June 11, 2026 |

Jonathan F. Cohen argued the cause for appellants (Plosia Cohen, attorneys; Jonathan F. Cohen, of counsel and on the briefs, and Veronica A. Acevedo, on the briefs).

Donald M. Doherty, Jr., argued the cause for respondent (The Law Office of Donald M. Doherty, Jr., attorneys; Donald M. Doherty, Jr., on the brief).

Benjamin M. Shultz, Assistant Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney;

Jeremy M. Feigenbaum, Solicitor General, Benjamin M. Shultz, Christopher Weber, and Raymond R. Chance, III, Assistant Attorneys General, of counsel, and Sara M. Gregory, Assistant Attorney General, of counsel and on the brief, and Ivonnely Colon-Fung, Deputy Attorney General, on the brief).

Carl R. Woodward, III, argued the cause for amici curiae New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys (Carella, Byrne, Cecchi, Olstein, Brody & Agnello, attorneys; Carl R. Woodward, III, on the brief).

CJ Griffin argued the cause for amici curiae American Civil Liberties Union of New Jersey and Libertarians for Transparent Government (Pashman Stein Walder Hayden, and American Civil Liberties Union of New Jersey Foundation, attorneys; CJ Griffin, Ezra D. Rosenberg, and Jeanne LoCicero, on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

In this case, we consider whether logs of personal, private email accounts containing government-related emails are government records pursuant to the Open Public Records Act (OPRA).

Respondent Alex Rosetti made an OPRA request to the Ramapo-Indian Hills Regional High School Board of Education seeking certain records, including email logs from Board members' personal -- i.e., non-government -- email accounts. The Board responded that it was under no obligation to provide logs from personal email accounts, as opposed to Board-issued email

2

accounts.  The trial court denied Rosetti's request for the logs.  On appeal, the Appellate Division reversed, holding that the Board must produce the logs.

For the reasons that follow, we affirm as modified the Appellate Division's judgment and hold that the Board must produce logs of the government-related emails contained in the personal email accounts of Board members.

I.

A.

In January 2023, Rosetti filed an OPRA request for records from the Ramapo-Indian Hills Regional High School Board of Education and its records custodian, Thomas Lambe (collectively, the Board).  Rosetti sought the following records:

> All comments submitted by the public comments form received by the Board from August 1, 2022 through to the date [of] the response.  The response should include the name, email, town, and the question or comment of the sender.  Email logs of all past and current Board members for all email accounts in which they have conducted or discussed Board of Education matters or business during the time frame of November 1, 2022 through to the date of the response.  The email log should contain the sender, recipient, those copied ("cc") or blind copied ("bcc"), the date, time, subject and identify the existence and name of any attachment.

The Board did not respond to Rosetti's request.  Rosetti subsequently filed an order to show cause and verified complaint against the Board, alleging

3

OPRA violations. The Board answered and suggested that Rosetti's request be reorganized as follows:

> (1) All comments submitted by the public comments form received by the Board from August 1, 2022, through to the date of the response. The response should include the name, email, town and the question or comment of the sender.
>
> (2)(a) Email log of Board members from Board server; and
>
> (2)(b) Email log of Board members from their own personal email addresses.

The parties reached a bifurcated settlement. As to item (1), the Board stipulated that there were no responsive records, and Rosetti accepted this stipulation. As to item (2)(a), the Board produced a redacted log derived from Board-issued government email accounts. The settlement did not resolve item (2)(b), the production of email logs from Board members' personal email accounts which they used to conduct Board business.

After his receipt of the Board's redacted log as to item (2)(a) of the OPRA request, Rosetti filed a certification with the trial court. Rosetti sought "to obtain email logs from the personal email accounts used by" the Board's members. Rosetti certified that "in the log that was supplied there are <u>dozens</u> of redactions demonstrating Board members using their District-supplied email accounts to communicate with other Board members['] personal email

4

accounts and even send[] information to their own personal accounts." To further support his position, Rosetti referenced "a newspaper article detailing the intricate, involved and expansive agenda the [Board] was able to vote upon without any significant discussion at its reorganization meeting."

In response, the Board argued that government records do not include email logs from non-government email accounts. The Board filed a certification from John Chang, the Director of Technology for the Ramapo-Indian Hills Regional High School District (the District). Chang indicated that he is responsible for managing and administering the email services and accounts provided to school district employees and Board members. He stated that he has the ability to "easily and expeditiously extract data from the District-controlled Google Workspace . . . accounts, including for the purpose of fulfilling OPRA requests such as ones for email logs." Chang explained that although he "can generate logs from the District's Workspace service with relative ease," it would be "difficult if not impossible to generate logs from most if not all of the many private email accounts which are used by Board members." Chang further certified that even if he were able to generate a log from Board members' private accounts, it would take hours to do so, and he would be unable to attest to its accuracy because he "cannot recover deleted emails in the same way [he] can on the District Workspace service."

5

In reply, Rosetti reaffirmed his position that the Board is required to produce the requested email logs regardless of the location of the records and the effort required to obtain them.

B.

In December 2023, the trial court issued a written decision denying Rosetti's request. The trial court determined that Paff v. Galloway Township, 229 N.J. 340 (2017), cannot be interpreted to extend to logs of personal email accounts, given there was no unequivocal declaration to that effect in that opinion from this Court. It found that there was "no showing that the email logs from the personal email accounts of government officials are required to be made, maintained, or kept on file during the course of official business." The trial court concluded that "[w]hile it is undeniable that [Rosetti] has a right to the email correspondences from the private email accounts of the Board members, that right cannot be extended to include email logs from personal, non-Board-issued email accounts."

Additionally, the court explained that requiring the production of personal email logs would place a significant burden on the Board, citing Chang's certification. Specifically, the court noted that the Board lacks the legal authority, administrative access, and technological capability needed to generate such logs. The trial court also expressed doubt that the Legislature

6

would ever intend to force government agencies to compile, create, and produce records that are not within their control.

C.

The Appellate Division reversed the trial court's order and held that email logs from Board members' personal email accounts discussing Board business are subject to OPRA disclosure. Rosetti v. Ramapo-Indian Hills Reg'l High Sch. Bd. of Educ., 481 N.J. Super. 1, 12 (App. Div. 2025). The court, relying on Burnett v. County of Gloucester, 415 N.J. Super. 506 (App. Div. 2010), asserted that "records are government records if they are made by government officials even when the records are maintained by third parties, not the government." Rosetti, 481 N.J. Super. at 12. The court reasoned that the Board's position would allow their "members' email logs to be concealed under the cover of their private servers" and would "prevent Board members from being held accountable for their decisions." Id. at 11. Ultimately, the court held that email logs of Board members' private accounts are subject to OPRA "because the emails discuss Board business and were made by the Board members," even though "the requested email logs . . . are on Board members' private servers and not maintained nor controlled by the Board." Id. at 10, 12.

7

The Appellate Division rejected the Board's claims of technical difficulty and lack of access due to "the insufficiency of Chang's certification." Id. at 15. The Appellate Division directed the trial court to "require the Board members to search their personal email accounts to determine if the sought-after email logs are available" and to "ensure the parties make good faith efforts to reasonably resolve the document request as required by N.J.S.A. 47:1A-5(g)." Ibid. "If the email logs are unavailable or their production is burdensome," the Appellate Division instructed, the Board must provide "persuasive . . . certifications [pursuant to Paff v. Department of Labor, 392 N.J. Super. 334, 341 (App. Div. 2007)]." Ibid.

### D.

The Board filed a petition for certification. In its petition, the Board asserted that the Appellate Division "effectively classifie[d] an entire email log . . . from an elected official's private email account as a government record." The Board argued that this reasoning "rests on the flawed premise that an email user can generate a log isolating only government-related communications while disregarding this Court's definition of Galloway logs as far broader in scope." The Board asserted it may deny an overly broad request if it is "not worded in a way to identify particular records."

8

In his opposition to the petition, Rosetti conceded that a narrowing of his request to a log of emails just between Board members would be sufficient in explaining the following:

> If "A" has been communicating with "B" on their non-government email account, they simply acknowledge that they have done so in their certification. Then even if it is "impossible" to run an email log on their Yahoo or Gmail account, "A" simply goes to his email search bar on his inbox and types "B"'s private email. This will produce an acceptable email log of emails received from "B" . . . . "A" then does the same with board member "C", "D", "E" and "F".
>
> . . . .
>
> The remedy on remand from the trial court . . . could be something else, like searching the account with the specific email addresses.[1]

This Court granted the Board's petition for certification. 260 N.J. 604 (2025). We also granted leave to appear as friends of the court to the American Civil Liberties Union of New Jersey and Libertarians for Transparent Government (jointly, ACLU); the New Jersey State League of

---

[1] In his supplemental Appellate Division brief, Rosetti made a similar concession, suggesting that each Board member can "go to their search bar on their email account, enter the private email addresses of the other board members and officials" and provide an email log including "the subject of the email, the date, the time and if there is an attachment." Rosetti then suggested that the Board member "redact[] anything that is not a government-business related communication" and "certif[y] that this is what comprises the log."

9

Municipalities and the New Jersey Institute of Local Government Attorneys (jointly, the League); and the Attorney General.

## II.

Both parties and all amici generally agree that emails related to government business, even if housed in personal email accounts, are government records pursuant to OPRA. The parties disagree about whether email logs from those personal email accounts constitute government records.

The Board argues that OPRA does not require the production of email logs derived from information stored on private, non-government accounts. The Board points to the Court's opinion in in Galloway, stating that government records include "information stored or maintained electronically in a database on a municipality's server." The Board notes it is undisputed that the private email accounts of Board members are not maintained on the District's server. The Board also argues that the Appellate Division did not understand the technological distinction between emails and email logs. The Board asserts that although an email sent from a personal account can "easily be converted" into a government record if used "improperly to conduct

10

government business," a log of that personal email account is a separate report derived from "a huge amount of metadata."[2]

The League agrees with the Board that OPRA does not obligate government entities to produce email logs from private, non-government accounts. According to the League, government-related emails created by government officials using their private email accounts constitute government records. However, the League echoes the Board's concerns about the technological restrictions of generating email logs from private accounts. The Attorney General argues that email logs containing metadata from private, non-governmental servers are not "government records" under OPRA. The Attorney General further contends that OPRA requests must specify a discrete and limited subject matter, and that Rosetti's sweeping request was impermissibly overbroad.

Rosetti argues that OPRA requires records custodians to obtain email logs of private email accounts being used to conduct government business.

---

[2] Black's Law Dictionary defines "metadata" as "[s]econdary data that organize, manage, and facilitate the use and understanding of primary data." Black's Law Dictionary 1184 (12th ed. 2024). Email metadata specifically includes "internet protocol addresses, the dates the e-mail was sent, received, replied to and forwarded, and data that may not be readily accessible to certain viewers, such as blind carbon copy ('bcc') information and sender address book data." Philip J. Favro, A New Frontier in Electronic Discovery: Preserving and Obtaining Metadata, 13 B.U. J. Sci. & Tech. L. 1, 9 (2007).

11

Rosetti contends that, without an email log, "it is nigh-impossible for a requester to seek specific emails or often even formulate a request that is specific enough to obtain the emails they may ultimately be seeking." Rosetti challenges the trial court's determination that production of an email log from a private server is onerous and unduly burdensome. Rosetti argues it would be unfair for Board members to use their personal email accounts to communicate about public business and then claim that generating an email log from those accounts is too difficult.

The ACLU joins Rosetti in urging this Court to affirm the Appellate Division's judgment. The ACLU argues that the Board failed to provide evidence that fulfilling the request would substantially disrupt agency operations and failed to seek reasonable accommodations from the requester. The ACLU further asserts that, if some entries in the email logs are not "government records," OPRA requires agencies to produce the logs with redactions rather than withhold them entirely.

III.

A.

This State has "a long and proud 'tradition[] of openness and hostility to secrecy in government.'" Educ. L. Ctr. v. Dep't of Educ., 198 N.J. 274, 283 (2009) (alteration in original) (quoting N. Jersey Newspapers Co. v. Passaic

12

Cnty. Bd. of Chosen Freeholders, 127 N.J. 9, 16 (1992)).  To further enhance government transparency, OPRA was enacted "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process."  Mason v. City of Hoboken, 196 N.J. 51, 64 (2008) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Off., 374 N.J. Super. 312, 329 (Law Div. 2004)).  In short, "OPRA was designed to promote transparency in the operation of government."  ACLU of N.J. v. Cnty. Prosecutors Ass'n of N.J., 257 N.J. 87, 101 (2024) (internal quotation marks omitted) (quoting In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 276 (2017)).

Under OPRA, "all government records shall be subject to public access unless exempt," and "any limitations on the right of access . . . shall be construed in favor of the public's right of access."  N.J.S.A. 47:1A-1. "[D]eterminations about the applicability of OPRA and its exemptions are legal conclusions and are therefore subject to de novo review."  Simmons v. Mercado, 247 N.J. 24, 38 (2021) (alteration in original) (quoting Firemen's Ass'n, 230 N.J. at 273-74).

B.

OPRA defines a "government record" or "record" as

> any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or

13

image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, or that has been received in the course of his or its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof, including subordinate boards thereof. The terms shall not include inter-agency or intra-agency advisory, consultative, or deliberative material[.]

[N.J.S.A. 47:1A-1.1.]

Emails fall within the scope of this expansive provision. See, e.g., Wilson v. Brown, 404 N.J. Super. 557, 571 (App. Div. 2009).

OPRA also exempts more than 30 categories of records from the definition of government record, N.J.S.A. 47:1A-1.1, and places on public agencies the burden to prove that a requested item is exempt from disclosure, id. at -6; Gilleran v. Township of Bloomfield, 227 N.J. 159, 170 (2016).

In Galloway, we held that a log of electronically stored information in emails qualifies as a government record under OPRA. 229 N.J. at 357. The plaintiff in that case requested a log of emails sent by Galloway Township's Chief of Police and Municipal Clerk over a two-week period, consisting only of the "sender," "recipient," "date," and "subject" fields. Id. at 343. In Galloway, we provided the following example of the requested email log:

14

| Sender | Recipient | Date | Subject |
|--------|-----------|------|---------|
|        |           |      |         |
|        |           |      |         |
|        |           |      |         |

Id. at 344. The plaintiff did not request the contents of the emails. Id. at 343. The Township contended that only the emails -- not specific information embedded within them -- were "government records" subject to disclosure under OPRA, and it denied the request. Ibid. After the plaintiff filed a complaint, the trial court ordered the production of the requested fields of information. Ibid. The Appellate Division reversed, concluding that OPRA did not require the production of electronically stored information within emails. Ibid.

We reversed the Appellate Division's judgment and held that its overly restrictive reading of OPRA could not be squared with the law's objectives or statutory language. Id. at 343-44. In our reasoning, we noted that "OPRA makes clear that government records consist of not only hard-copy books and paper documents housed in file cabinets or on shelves, but also 'information stored or maintained electronically' in a database on a municipality's server." Id. at 353 (quoting N.J.S.A. 47:1A-1.1). In particular, we underscored that "information" is the key word, and therefore OPRA requires a government entity to provide an email log with certain electronic fields such as sender, recipient, date, and subject, "provided that it has the means of doing so." Id. at

15

353-54.  We also determined that this extraction of specific electronically stored information is not the creation of a new record, but rather disclosure of existing government records as envisioned by OPRA.  Id. at 353.

In Simmons v. Mercado, we considered whether complaint-summonses (CDR-1s) created by Millville Police Department (MPD) officers but stored on Judiciary servers were the police department's government records subject to disclosure under OPRA.  247 N.J. at 29.  MPD argued it was not obligated to produce the requested CDR-1s because it did not maintain them.  Id. at 40.  We rejected this argument, relying on OPRA's explicit language that defines a government record as "information stored or maintained electronically . . . that has been made, maintained or kept on file in the course of [a government employee's] official business."  Id. at 40-41 (emphasis altered) (quoting N.J.S.A. 47:1A-1.1).  Thus, regardless of who maintained the files or where they were maintained, "the fact that MPD [made] the CDR-1s mean[t] that it c[ould] be called upon to disclose those government records."  Id. at 41.

OPRA's broad reach also includes communications on personal devices and records contained in personal accounts, so long as those records involve government business.  See, e.g., Wilson, 404 N.J. Super. at 571, 579 n.6 (recognizing that an email exchanged between the Governor and a union

16

president on their personal accounts was a "government record," albeit one shielded by executive privilege).

Courts in other jurisdictions have interpreted their open public records acts to include records in personal accounts. The Supreme Court of California held that when city employees use personal accounts to communicate about public business, those communications may be subject to disclosure under the California Public Records Act. City of San Jose v. Superior Ct., 389 P.3d 848, 852 (Cal. 2017). The court stated that agencies can reasonably rely on employees to review their own personal accounts for responsive materials, which, combined with case-by-case review and redaction, adequately balances public access and privacy interests. Id. at 860.

In Toensing v. Attorney General of Vermont, the Vermont Supreme Court held that the state Public Records Act's definition of "public record" includes documents produced or acquired in the course of agency business, regardless of whether the documents are stored in private accounts of state employees. 178 A.3d 1000, 1004 (Vt. 2017). The court reasoned that allowing government employees to shield public records by conducting public business through private accounts would undermine the purpose of the law, which is to ensure citizens' ability to review and criticize government actions and promote accountability. Id. at 1007.

17

IV.

A.

Applying those principles, we hold that the Board must produce logs of government-related emails found within the Board members' private email accounts.

Both parties generally agree that Board business-related emails in Board members' personal email accounts are government records. Indeed, OPRA makes clear that a "government record" includes any "information stored or maintained electronically" that "has been made, maintained or kept on file in the course of [a government official's] official business." N.J.S.A. 47:1A-1.1. Emails, whether created on a government official's government or personal account, can certainly fall within OPRA's definition of a government record. Of that, there is no dispute between the parties.

The issue in this case involves logs of those government-related emails stored in personal email accounts and whether Rosetti is entitled to such logs. Rosetti's OPRA request sought an "[e]mail log of Board members from their own personal email addresses." Rosetti and amici in support argue that because the government-related emails themselves are government records, so too are the logs of the personal email accounts where those emails are housed, citing to this Court's decision in Galloway.

18

In Galloway, a case involving an OPRA request seeking emails between a municipality's employees in their government email accounts, we held that a log of electronically stored information in those email accounts constituted a government record. 229 N.J. at 357. We determined that the extraction and creation of an email log of government-related emails was not the creation of a new record, but rather a reconfiguration of existing government records in the form of a log. Id. at 353. The email log contemplated and ordered to be produced in Galloway was one which could be created by the municipality's information technology professionals from metadata accessed through the municipality's server. See id. at 354 ("Information in an email includes certain fields: the sender, recipient, date, and subject. Extracting that kind of information requires 'programming of information technology'" within the meaning of N.J.S.A. 47:1A-5(d). (citation omitted)).

During the pendency of this litigation, Rosetti sought what we will refer to as a Galloway-type email log -- one generated electronically using metadata from an email server. The Board responded accordingly and its director of technology's certification discussed at length the technological challenges he believed he would encounter attempting to generate logs or reports from personal email accounts housed on private servers. The parties thereafter debated in the trial court whether a log of the Board members' private email

19

accounts, which would also include redacted non-government-related emails, is a government record subject to production pursuant to OPRA. The posture of this case changed, however, on appeal.

In his brief in opposition to the Board's petition for certification, Rosetti conceded that logs of Board members' private email accounts consisting only of emails between Board members would suffice in response to his OPRA request. In his brief, Rosetti noted that "even if it is 'impossible' to run an email log on their Yahoo or Gmail account," i.e., a Galloway-type log, an acceptable log could be one created by the Board member by searching their private email accounts for Board-related emails. Rosetti even suggested the search procedure quoted above for situations in which Board members have communicated with each other using their private email accounts, which essentially requires that Board members search their inboxes as well as their trash, sent, and any other relevant folders for messages to or from other Board members.

We agree with Rosetti that such a log would be acceptable and responsive to his OPRA request and hold that the Board and its members must search their personal email accounts in this manner, or by any other acceptable method that will yield the Board-related emails, in order to create logs of government-related emails housed in those personal email accounts. Although

20

the Galloway opinion focused on electronically generated email logs from servers, email logs are not one size fits all, as Rosetti himself conceded. After Board members complete searches of their private email accounts and produce a log or logs of government-related emails,[3] they should submit a certification detailing the searches they conducted in their private email accounts so that, on review, a trial or appellate court can assess whether proper searches were completed to capture all relevant Board-related emails. This procedure should sufficiently satisfy the Board's obligations under OPRA pursuant to Rosetti's request.

## B.

We briefly note that the OPRA request for the private email account logs in this case was overbroad.[4] Rosetti's request for "[e]mail log[s] of Board Members from their own personal email addresses" did not specify that it sought logs of government-related emails and seemingly requested logs of entire private email accounts, irrespective of the amount of non-government-related messages the accounts might contain. The Appellate Division's ruling

---

[3] If the log or logs generated by the Board members pursuant to this search method include emails that are unrelated to Board business, those emails should be redacted.

[4] The Board's argument that the OPRA request was overbroad was belated, so we only briefly address this issue.

21

was also very broad in its holding that "email logs of the Board members' private servers sought by Rosetti are subject to OPRA because the emails discuss Board business and were made by the Board members." Rosetti, 481 N.J. Super. at 12. This broad language seems to conflate the government-related emails in the private accounts with email logs of the entirety of the private email accounts. The holding also suggests that all the emails, or at least a log of all of the emails in a private email account, would constitute government records just because <u>some</u> of the emails in that account discuss Board business.

We do not find that logs of entire private email accounts are government records by virtue of the fact that government-related emails might be present in those accounts. For example, if out of 1,000 emails in a personal email account only 10 are government-related, a log of those 1,000 emails (even with the private emails redacted) cannot be said to constitute a government record under OPRA. It is only the log of <u>government-related</u> emails that is a government record.[5]

---

[5] Contrary to the Appellate Division's remand directive that "Board members must search their personal email accounts <u>to determine if the sought-after email logs are available</u>," Rosetti, 481 N.J. Super. at 4, 15 (emphasis added), email logs generally must be generated and are not otherwise present and available in email accounts.

22

C.

Lastly, we reiterate that emails related to government business, whether stored on government or private servers, are within OPRA's reach, so using a private email account will not shield those government records from production under OPRA.  The issues in this case could have been avoided altogether if Board members did not use their private email accounts to conduct Board business and instead used only their government-issued email accounts, as intended.  Government agencies should strongly advise their employees, elected officials, and others engaged in government-related business to refrain from using their personal email accounts when conducting government-related business.

V.

The Appellate Division's judgment is affirmed as modified.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion.

23